ELEDGE *et al. v.* DIXON *et al.*

HARRIS *et al. v.* ELEDGE *et al.*

(*Knoxville,* September Term, 1951.)

Opinion filed June 7, 1952.

Duggan & Washington, of Athens, Kramer, Dye, Mc-Nabb & Greenwood, of Knoxville, and Charles C. Guinn, of Etowah, for appellants.

Frank K. Boyd, and Frank N. Bratton, both of Athens, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This cause, which originated in the Chancery Court of McMinn County, Tennessee, involves the validity of a charitable trust which was created by the will of one J. Astor Bloom, said will being probated in the County Court of McMinn County on August 1, 1944. On the day the will was admitted to probate W. W. Eledge qualified as Executor of the will. On May 11, 1946, W. W. Eledge, Executor of the will, Blaine Lawson, Ed Morris, and W. W. Eledge, claiming to have been appointed as Trustees under the will of the said J. Astor Bloom, filed an original bill in the Chancery Court alleging that the estate was one of considerable value, and having doubts about the proper course in administering certain provisions of the will, sought a decree validating the Trust as an enforceable Charitable Trust, and that the duties of the Executor and the Trustees be fixed and declared by the court; that the rights of all parties claiming an interest in the estate be also declared.

The bill alleged that the said J. Astor Bloom was never married, and was not survived by a widow, children, parents, brother or sister, and that his nearest relatives are the defendants, who are first cousins, and named in the bill. These persons were made defendants to the bill because ''they occupy the position of next of kin to said testator.'' The bill alleged that the will creates a valid Charitable Trust and should be administered by Trustees free from the claims of defendants.

There was personal service of process upon two of the named defendants, John B. Dixon and Mrs. Julia Harris, and service by publication upon Horace Dixon. Neither of the defendants made an appearance in the case and a

judgment *pro confesso* was duly entered against them. It appears that at the September Term of court other first cousins were named defendants in an amended bill. Several of these failed to make an appearance and a *pro confesso* was entered as to them. On March 2, 1949, an Intervening Petition was filed by four first cousins of the deceased complaining of defects in the service of process and praying that the decrees *pro confesso* be set aside. With this Intervening Petition there was exhibited a demurrer to the Original Bill which petitioners asked leave to file. The demurrer attacked the validity of the alleged testamentary trust. The Chancellor permitted the demurrer to be filed. Later there was filed a Bill of Review by first cousins of the deceased, who did not join in the Intervening Petition. This Bill of Review attacked the Charitable Trust created by the will, and alleged that it was invalid and not enforceable. The Executor of the will and the named Trustees were made defendants.

The will is rather unusual in many respects. The pertinent part, which creates the Trust and which is assailed by the defendants, is as follows:

"Etowah, Tenn., County of McMinn, October 27, 1926.

"To whom it may concern, Greetings.

Be it known by these present that I, John Astor Bloom, on the 50th anniversary of my birth, am both sound of body and sound of mind and am not influenced by any person or persons, or any thing except my own wishes in making simple a bequest concerning my earthly possessions and setting forth in this my last will and testament the persons and purposes to be remembered at my passing.

"1. First and foremost and most important of all, I commend my humble spirit unto the matchless mercies and marvelous grace of Thee, O! Almighty God, who are exceeding abundantly able to keep forever and forever; and 'Rest my weary soul on Thee, that in thy ocean depths, its flow may richer, fuller be', in Jesus Name."

Section 2 makes provision for his funeral and the payment of his just debts. Section 4 makes small bequests to two of his namesakes. These sections are omitted; also Sections 9 and 12, as not important in considering the question involved.

"3. And that W. P. Bloom and Robert H. Bloom my two now living brothers, if still living at my death, be allowed only fifty and no/100 dollars ($50.00) each, and

\* \* \* \* \* \* \* \* \*

"5. That the rest, residue, and remainder of my estate and possessions, including all my insurance, both life and accident, that I now carry or may hereafter buy or acquire—insurance now carried listed on separate paper and attached hereto—be added to and become a part of a fund created by me in memory of my Mother known as the 'Martha A. Bloom Memorial Charity Fund', which I am placing in the hands of a board of trustees appointed by me, or its successors in trust, in the town of Englewood, and

"6. That this fund above mentioned shall be so handled by the board of trustees, in First Mortgage loans on real estate only, (Not to exceed one (1/3) the assessed value of the property, by the County) as to guarantee to the purposes hereinafter set forth an annual revenue of not less than 6% on the principal;

this fund may be increased by virtue of unused dividends or revenues, or by additional contributions or donations, but may never be reduced when once these additions have been made to it.

"7. The interest or revenue so earned by the above fund and its additions shall be used to clothe the worthy, helpless, destitute, poor, children under the age of twelve years, in the vicinity of Englewood with good substantial, servicable garments, to be purchased at wholesale, no one receiving a profit from the purchase and handling of the same;—prices in no case to exceed the published prices of the great mail order houses of the time, as Sears, Roebuck & Co. and Montgomery Ward & Co., for the same class and grade of articles.

"8. The board of trustees of this fund above mentioned shall consist of three honorable men, of high manly ideals, the first board being W. W. Eledge, Chairman, Blaine Lawson, and Ed Morris. The membership of this board of trustees shall be for the life of each member or so long as he shall remain a citizen of the State of Tennessee, and act on the board as above set out—manly, honorable and unselfishly. At the death of any member of the board the remaining two members shall meet and confer and decide among themselves as to a proper person to be selected to fill the vacancy and shall within the ten days following, confirm a selection, and allow such a one to go before the clerk of the County Court of McMinn County and take the following simple oath: namely 'I———upon my sacred honor as a man, in the presence of the Angels and you, and before Almighty God, do solemnly promise and swear that I will execute the duties of this trust with manly

honesty, and sober business discretion, so long as I shall live, so help me God.' "

\* \* \* \* \* \* \* \*

"10. The checking up of all purchases and the distribution of purchases, shall be made by the board in session; and record kept year by year showing the name of persons benefitted, their ages, and the articles placed to each,—though this record may be required by the board of trustees from the organization through which the board may choose or select to make this distribution, such as the Salvation Army, Home Mission Society, of either of the churches in Englewood and etc.—but the board will select each year the charitable organization to be used for this purpose and give them notice of the amount to be expended and the conditions attending such expenditure not later than November 15th, so that the society or organization may have ample opportunity to make its canvass and do its purchasing etc.

"11. This fund is for the benefit of the worthy, helpless, destitute, poor children of the vicinity above named and shall be an indefeasible inheritance to them forever, hereinbefore set forth; and may not be taxed for any purpose whatever and is established in memory of Martha A. Bloom, for the sake of humanity in the persons of the poor, which are 'God's very own'. Each article shall bear a card with this notation, 'By Martha A. Bloom in Jesus name' and shall be distributed at Christmas time as above set out.

"No person may arise and claim an inheritance under the condition of this will, as a son or daughter, of the maker, John Astor Bloom, for he is not and

never was married; and as the maker has 'never known a woman'. The trustees will deny any and all such claims as fraudulent, and defend the will and the funds covered thereby against all claimants whomsoever; and W. W. Eledge as Chairman—is hereby designated as executor of this Will. At a consideration to him of only Five Dollars ($5.00) per day and expenses, for each day spent away from his regular business in the execution of the same; and Now:

> " 'Life, we've been long together
> Through pleasant and cloudy weather,
> 'Tis hard to part when friends are dear,
> Perhaps t'will cost a sigh or tear,
> But steal away, give little warning—
> Choose thine own time—
> Say not Good-night, but in that
> 'Brighter Clime,
> Bid me Good-morning.'

"In witness whereof I have hereunto set my hand and seal, this the 27th day of October, 1926—

(Signed)

"J. Astor Bloom
―――――――――――
"J. Astor Bloom

"Witness Charlie Houlk"

"Witness Peter T. Culpeper

The Chancellor found that all necessary parties were before the court by service of process or by class representation; "that the exhibited will creates a valid charitable trust to be administered by the Trustees in accordance with the provisions of said will and under the

direction and decrees of this Court to which said estate has heretofore been transferred.''

Adverting to the right of certain claimants to share in the estate of Bloom deceased, and who filed the Bill of Review for the purpose of reviewing and setting aside the original decree sustaining the trust, the said Bill was dismissed on demurrer. In dismissing the Bill the Chancellor found as follows: ''The Court is of the opinion upon full consideration of said will and of the authorities that the principal object, intent or general purpose of the testator can be carried out, and the trust executed.'' *Green* v. *Allen*, 24 Tenn. 170; *Henshaw* v. *Flenniken*, 183 Tenn. 232, 191 S. W. (2d) 541, 168 A. L. R. 1010; and *Ratto* v. *Nashville Trust Co.*, 178 Tenn. 457, 159 S. W. (2d) 88, 141 A. L. R. 341.

The defendants in both causes appealed to this Court and assigned errors. The sole question for determination is whether or not the two Chancellors were in error in holding that the will of J. Astor Bloom created a valid charitable trust which could be carried out and duly executed according to his purpose and intent.

The appellants in proper assignments of error say (1) that the trust is void because of indefiniteness; (2) that assuming that the inconsistencies can be reconciled, the trust is so vague and indefinite that it is void; (3) the duties and obligations imposed by the trust were impossible of performance.

It would unduly prolong this opinion for us to make reply to the numerous arguments of counsel in support of the foregoing assignments of error. The counsel undertake to point out ''inconsistencies'' in the will, but in the opinion of the Court there are none. The argument of counsel that the Trust is void because of ''indefiniteness'', ''inconsistencies'', and that the ''duties and obli-

gations'' of the Trustees cannot be performed, fails to concede that the Trustees have any discretion about anything in the performance of their duties. The insistence seems to be that the Trust should be held invalid because it fails to spell-out in minute detail the way and manner in which it is to be administered. This is not the law.

■ The appellants contend that there is an inconsistency in paragraph 7 and that this paragraph also conflicts with paragraph 11. It is said that while paragraph 7 provides that the fund ''shall be used to clothe the worthy, helpless, destitute poor children under the age of 12 years in the vicinity of Englewood'', there is a provision in paragraph 11 which provides for helpless, destitute children in the vicinity of Englewood *without any limitation as to age,* etc. We find no inconsistency whatever in these separate provisions.

■■ It is further argued that the will is indefinite because ''children living in the vicinity of Englewood'' is meaningless; that there is nothing in the will to indicate that in naming the Town of Englewood he had in mind any particular town by that name; that the will could apply to poor children under twelve (12) years of age living in the vicinity of Englewood, New Jersey, or Englewood, Colorado. The counsel seem to be wholly oblivious to the fact that the deceased lived in Englewood in McMinn County, Tennessee, and that, if necessary, it would be entirely proper for the court to hear extrinsic evidence to determine the town the testator had in mind when he executed his will. *Sacred Heart Academy, etc.,* v. *Karsch,* 173 Tenn. 618, 122 S. W. (2d) 416; *Tarwater* v. *Baptist Orphans' Home,* 173 Tenn. 409, 119 S. W. (2d) 919.

 In addition to the cases cited by the Chancellor sustaining the Trust as being valid and enforceable, other cases are equally as strong, such as *Dickson* v. *Montgomery*, 31 Tenn. 348; *Frierson* v. *General Assembly of Presbyterian Church*, 54 Tenn. 683; *Heiskell* v. *Chickasaw Lodge*, 87 Tenn. 668, 677, 11 S. W. 825, 827, 4 L. R. A. 699, wherein the Court held:

"The following principles are settled in Tennessee: *First,* that trusts for charitable uses should be favored by courts of equity; *second,* that where the object of the charity is definite, and it is to be administered by trustees, it will be sustained; *third,* that although the objects may be too indefinite for a court of chancery to undertake to administer it, yet, if a trustee capable of taking the trust be named and clothed with the necessary powers and discretion for carrying out the charity, it will be upheld."

In *Johnson* v. *Johnson*, 92 Tenn. 559, 23 S. W. 114, 116, 22 L. R. A. 179, the Court held that there was a broad distinction between a gift directly to a charitable institution already established and a gift to trustees to be used for charity, as in the case now before us. The holding in *Heiskell* v. *Chickasaw Lodge,* supra, was reaffirmed. It was further said by the Court:

"Nevertheless, the courts will sustain a charity when the plan and scheme for its management is left to the discretion of trustees, and will, if necessary, formulate a scheme for the conduct of the charity, or uphold the plan and schemes which the trustees, in their discretion, may adopt and formulate, and prevent any interference therewith. *State* v. *Smith,* 16 Lea, [84 Tenn.] [662] 670; Perry on Trusts, Secs. 744, 700; *Dickson* v. *Montgomery,* 1

Swan [31 Tenn.] 348; *Gass* v. *Ross, 3 Sneed* [35 Tenn.] 346 [211]; * * * *State, ex rel. T. J. Duncan,* v. *Martin Female College,* (Tenn.; filed Jan. 1888.)''

■ The counsel for appellants further insist that the words ''worthy'', ''helpless'', ''destitute'', ''poor'' have ''numerous meanings'' and complain that the Chancellor erred in construing these words to include ''needy'' children. There is no merit in this criticism.

Contention is further made that ''The Trust cannot be saved by the *cy pres* doctrine''; that this Court has upon numerous occasions renounced the doctrine. We find it unnecessary to respond to this insistence since the trust is capable of being executed without regard to the *cy pres* doctrine.

■ We are unable to agree with the counsel that the objects of the trust are indefinite and incapable of receiving benefits on the ground that the testator in Section 10 of the will left it to the discretion of the Trustees the manner of selecting beneficiaries. The Chancellor decreed that the trustees might select from year to year some reputable church in Englewood, Tennessee, or the Missionary Society of some church, or the Salvation Army to aid them in administering the fund. This holding is almost a verbatim statement of the express terms of Section 10 of the will and does no violence to the real intention of the testator.

We find other criticisms of the will to be of the same general tenor, and are not of sufficient merit to sustain the contention that the said will is vague, inconsistent or indefinite as to beneficiaries, and void. The assignments of error are overruled and the Chancellor's decree is affirmed.

Holding, as we do, that the will of decedent creates a valid charitable trust and capable of being executed

in compliance with the testator's intention, it is not necessary that we consider the assignments of error in the cause of Harris v. Eledge, Executor. The assignments raise the question as to the validity of the trust and this is the same question involved in Eledge v. Dixon. The decree of the Chancellor dismissing the Bill of Review is sustained.