386 P.2d 563 (1963)
In the Matter of the ESTATE of Carter P. EGGAN, Deceased.
Signe V. SAWYER, Plaintiff, Contestant, Appellant,
v.
Martin V. HUFF, as executor of the Estate of Carter P. Eggan, Deceased, and the City of Moscow, Idaho, a Municipal Corporation, Defendants, Proponents, Respondents.
No. 9195.
Supreme Court of Idaho.
November 1, 1963.
*564 J. H. Felton, Lewiston, J. L. Eberle, Boise, for appellant.
Robert W. Peterson, John F. Brady, Moscow, for respondents.
McFADDEN, Justice.
Carter P. Eggan, a resident of Moscow, Idaho, died May 20, 1960 at the age of 65 years. His purported will dated September 5, 1958, was presented for probate. His sister, Signe V. Sawyer, the appellant, contested the admission to probate of this will. She alleged at the date of the execution of the will Mr. Eggan was not of sound and disposing mind, but was so addicted to the use of alcoholic beverages that he did not know what he was doing, and that he was acting under duress, menace, fraud and undue influence. She also alleged the will was not duly executed and attested by Mr. Eggan and the subscribing witnesses. She further alleged that the trust in the City of Moscow, attempted to be created by the fifth paragraph of the will is, not only so ambiguous, so indefinite and uncertain that it cannot be carried out, but is beyond the authority of the city council. The fifth paragraph of the instrument reads:
"I hereby give, devise and bequeath all the rest and residue of my estate to the City of Moscow, Idaho, my home, said devise and bequest by said city to be used only to build and/or furnish and/or equip a Youth Center Building situate within the corporate limits of Moscow, Latah County, Idaho, and said building to be used primarily for the recreation of the youth of this area. It is not the intention of testator that said Youth Center be situated in a separate building of its own, but that, should the city government deem it advisable, *565 this devise and bequest can be used for the construction of a Youth Center Building."
The probate court heard the issues presented by the petition for probate of the will and for issuance of letters testamentary and appellant's contest. That court ruled against appellant, finding:
"* * * that said document is the Last Will and Testament of Carter P. Eggan, deceased, and that it was executed in all particulars as required by law, and that said testator, Carter P. Eggan, at the time of the execution of said will was of sound and disposing mind and memory and not acting under undue influence, menace, fraud or duress, nor under the influence of alcoholic liquors, * * *"
The will was admitted to probate and respondent Martin V. Huff, appointed the executor of the estate. The court did not construe the fifth paragraph of this will and made no ruling as to its validity.
Appellant thereafter appealed to the District Court from the Order Admitting Will to Probate, Certificate of Proof, and Order Appointing Executor on questions both of law and fact.
The District Court submitted special interrogatories to a jury touching upon the questions of execution of the will by the testator, his freedom from duress, menace, fraud, or undue influence, and his competency. The trial court reserved the question presented by appellant's initial pleading concerning the validity of the fifth paragraph of the will. The jury found in favor of respondents on the issues presented and the trial court, accepting the jury's findings as to the testator's competency, entered its judgment and decree that the will was properly executed by the testator, without duress, menace, fraud or undue influence, and also ruled that the fifth paragraph of the will was valid. The court thereafter denied an alternative motion for new trial or for judgment notwithstanding the verdict, or for summary judgment.
Appellant appeals from this judgment and decree and the order denying the motion for new trial, and judgment notwithstanding the verdict, or summary judgment. Appellant directs assignments of error to instructions given by the trial court; refusal to give certain requested instructions; refusal to hold the fifth paragraph of the will to be invalid; and to the Findings of Fact, Conclusions of Law and Decree; she contends the same are not supported by the evidence.
Appellant specifically assigns as error the giving of instructions Nos. 11, 12, 13, 14, 15, 16, 20, 21, 23 and 24. She contends that these instructions unduly assert the necessity of strong, direct proof of undue influence where only circumstantial evidence is presented on that issue.
The record indicates that Instruction No. 14 given by the court was from appellant's own requested instructions. Assignment of error cannot be predicated upon a requested instruction thus given. Neff v. Hysen, 72 Idaho 470, 224 P.2d 146.
Instructions Nos. 20 and 21 do not deal with undue influence, but are concerned with the burden of proof of fraud and a definition of fraud. Instruction No. 23 is concerned with duress and No. 24 with the law of menace; neither of them have to do with undue influence.
Instruction No. 15 in effect states that the mere existence of a confidential relationship does not in itself establish undue influence. Instruction No. 16 states that there is no presumption of undue influence merely because the attorney who prepared the will also was named as the executor of the will. Both are correct statements of the law and both were properly given. Swaringen v. Swantrom, 67 Idaho 245, 175 P.2d 692.
Instructions 11, 12 and 13 dealing with "undue influence" read as follows:
"No. 11. The court instructs the jury that, in an action to set aside a will of a deceased person on the ground of undue influence, it is necessary *566 to show that the influence was such as, in effect, to destroy the testator's free agency and substitute for his own another person's will. Mere general influence is, however strong and controlling, not to bear upon the testamentary act, is not enough; it must be influence used directly to procure the will and must amount to coercion destroying free agency on the part of the testator.
"No. 12. The court instructs the jury that undue influence has been, in effect, defined as domination by the guilty party over the testator to such an extent that his free agency is destroyed and the will of another person substituted for that of the testator.
"No. 13. You are instructed that `undue influence' is any means employed upon and with the testator which, under the circumstances and conditions by which the testator was surrounded, he could not well resist, and which controlled his volition and induced him to do what otherwise would not have been done."
These instructions also correctly state the law. In re Lunders' Estate, 74 Idaho 448, 263 P.2d 1002; In re Motz's Estate, 136 Cal. 558, 69 P. 294 (1902); In re Keegan's Estate, 139 Cal. 123, 72 P. 828 (1903). In In re Lunders' Estate, supra, this court cited In re Arnold's Estate, 16 Cal.2d 573, 107 P.2d 25 (1940), (which in turn relied upon In re Keegan's Estate, supra), from which was taken the language employed in Instruction No. 11. Instruction No. 12 comes from the language used by this court in the Lunders' estate case. Instruction No. 13, altho not necessary, was confined to the definition of the term "undue influence". No error appears in the giving of these instructions.
In Stoddart v. Idaho Concrete Products Co., 76 Idaho 417, 421, 283 P.2d 922, 924, is stated the rule:
"`All instructions given in a case must be read and considered together, and where, taken as a whole, they correctly state the law and are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole charge and was not misled by an isolated portion which considered alone, does not fully and clearly state the law applicable to the facts in the case.'"
Appellant assigns as error the refusal of the trial court to give three of appellant's instructions, one dealing with a definition of the terms "youth", "child" and "center". Another requested instruction read:
"You are instructed that in order for the Will of Carter P. Eggan, to be upheld he must have understood the nature and extent of the gift he was making to the City of Moscow in paragraph 5 of the will. If he did not understand that the gift to the City of Moscow, if received by the City, could be used for any City purpose, and was not limited to the aid or betterment of children or youth, the will is invalid."
Another requested instruction read:
"You are instructed that as a matter of law, if the will of Carter P. Eggan is upheld, paragraph 5 of the will is an absolute gift of the majority of Carter P. Eggan's property, to the City of Moscow, and that the additional words in paragraph 5 of the will do not limit the use of the gift to any particular purpose."
The last requested instruction was phrased in form of interrogatories to the jury, dealing with what decedent understood as to the nature and extent of the gift to the City of Moscow. Appellant contends that failure to give these instructions was error for they go to the validity of the will itself. The trial court instructed the jury that they were not to concern themselves with the interpretations of paragraph five of the will, as the interpretation and construction of such paragraph was a matter of law for the court. Appellant contends the *567 district court by such actions precluded the jury from considering the circumstances surrounding the execution of the will.
The jury was properly instructed that they need not concern themselves with the meaning, interpretation or validity of the fifth paragraph of the will. These requested instructions pertained to a construction of the fifth paragraph, which involved legal questions only. The court explicitly instructed the jury that for the testator to make a valid will it was essential to find he had:
"* * * sufficient mentality to enable him to know what property he possesses and of which he was making a testamentary disposition, to consider and know who are the natural objects of his bounty and to understand what the disposition is that he is making of his property by his will."
According to appellant's theory the jury was to pass upon questions of law reserved to the court; this the trial court properly declined to do.
Other assignments of error are directed to the sufficiency of the evidence to sustain the jury's findings and the court's findings that the will was properly executed, without duress, menace, fraud or undue influence, and that the testator was competent to act. The record shows the testator for many years had suffered from chronic alcoholism and had been treated repeatedly for this problem. The evidence is conflicting as to how much decedent was affected by his drinking. There is expert testimony indicating that he suffered brain damage; there is, however, both lay and expert testimony that he was not much affected by his drinking, and that during the period of time the will was executed he had forsaken the use of alcohol. Other witnesses acquainted with the testator for many years all testified that he was a man of average intelligence. Suffice it to say that there is substantial, competent, although conflicting evidence to sustain the findings pertaining to the issue of testator's mental capacity to make a will, and as to the issue of duress, menace, fraud or undue influence; therefore this Court will not disturb such findings. Estate of Brown, 61 Idaho 320, 101 P.2d 11; In re Heazle's Estate, 74 Idaho 72, 257 P.2d 556; Estate of Randall, 58 Idaho 143, 70 P.2d 389; In re Goan's Estate, 83 Idaho 568, 366 P.2d 831.
Appellant assigns as error the action of the court in permitting certain cross examination of Dr. Adams, one of appellant's witnesses, who testified that the testator had been the doctor's patient. On direct examination he was asked to identify the death certificate, and the examination proceeded:
"Q. Now from that record before you [records of the Moscow Clinic], can you tell whether or not Carter P. Eggan was an alcoholic?
"A. The certificate of death, cause of death, section II, listed chronic alcoholism.
"Q. For what duration?
"A. Years."
On cross-examination, Dr. Adams was asked to define chronic alcoholism. Appellant objected, and the objection was overruled. Counsel inquired as to the number of times Mr. Eggan appeared drunk, and to be under the influence of alcohol, when he came to the doctor's office. Appellant again objected, and this objection likewise was overruled. There is no merit to appellant's contention that this cross examination was error. In Towne v. Northwestern Mutual Life Ins. Co., 58 Idaho 83, 91, 70 P.2d 364, 367 this court stated:
"Although cross-examination is limited to facts stated in the direct examination or connected therewith, this allows cross-examination not only as to all facts stated by a witness in his original examination, but as to other facts connected with them, directly or indirectly tending to explain, modify, or qualify the inference resulting from *568 the facts stated by the witness in his direct examination."
The cross-examination was pertinent to facts covered in the direct examination. See also: Trull v. Modern Woodmen of America, 12 Idaho 318, 85 P. 1081.
Concerning the appellant's assignments of error directed to the trial court's construction placed upon the fifth paragraph of the will, appellant did not question the jurisdiction of the district court to construe the fifth paragraph of the will, on her appeal to the district court in the will contest proceeding under I.C. § 15-213. This Court is familiar with the rule that generally in a will contest proceeding the issues presented to the court relate only to proof of facts pertaining to the due execution of the will, competency of testator and freedom from duress, menace, fraud or undue influence, but may not relate to a construction of the terms of the will by the court hearing the cause. See: 95 C.J.S. Wills § 317b, p. 138; 57 Am.Jur. 530, Wills § 777; 2 Page on Wills (Lifetime Ed.) 202, § 639; 1 Bancroft's Probate Practice (2d Ed.) 436, § 180. However, by the pleadings of the parties, and the pre-trial order of the court, construction of the will was sought by all parties. The district court had before it the necessary parties and the will itself; it is a court of general jurisdiction (Idaho Const. Art. 5, § 20), and under the circumstances properly could consider the question as one involving a petition for declaratory judgment I.C. § 10-1204(c), although the probate court did not attempt any construction of the will. See: White v. Conference Claimants Endowment Com'n, 81 Idaho 17, 336 P.2d 674.
"In interpreting testamentary writings the intention of the testator is to be ascertained and given effect where possible and lawful." White v. Conference Claimants Endowment Com'n. supra. In the instant case we are called upon to determine if the testator intended to give the City of Moscow an absolute or a conditional gift, or whether he intended to establish a trust. The fifth paragraph indicates the testator did not intend an absolute bequest to the city; the use of the words "to be used only * * *" indicates he had another purpose in mind. Nor can this provision be construed to have affected a conditional gift to the city. There are no words of reversion in the event of failure of any condition. Finally, a person who receives a conditional gift is considered as having legal and equitable title subject to divestment. From the words of Eggan's bequest, he intended that the city hold legal title, but it is not clear that he intended to vest the city with equitable title. The words of bequest indicate that the city was to hold the legal title for the benefit of the "youth of this area." It thus appears that he intended to establish a trust.
The essential characteristics of a trust are the separation of the legal from the beneficial interest and the existence of a fiduciary relationship. Pacific States Savings & Loan Co. v. Commercial State Bank,. 46 Idaho 481, 486, 269 P. 86, 87, 59 A.L.R. 443. It is self evident that the testator had in mind a charitable purpose. "Gifts to a governmental unit which lessen the burdens of government, or which are in aid of public improvements and undertakings, are for charitable purposes." 14 C.J.S. Charities § 13, p. 442. The separation of legal and equitable titles are not so obvious in charitable trusts as in trusts of a non-charitable character. Particularly true is this when the trustee is a municipality. For example, when a testator gives property to a city for use by the public as a park or public square there appears to be no clear separation of legal and equitable title. However, the courts are inclined to say that the land is held in trust for use by the public. Briggs v. Merchants Nat. Bank of Boston, 323 Mass. 261, 81 N.E.2d 827 (1948); In re Hart's Estate, 151 Cal.App.2d 271, 311 P.2d 605 (1957); Kibbe v. City of Rochester (W.D.N.Y., 1932) 57 F.2d 542. Or that the land is held in the form of a quasi-trust in which the city takes absolute title, but "* * * nevertheless, *569 [the land] to be used in such a manner as will not defeat the expressed intention of the testatrix." In re Oliver's Will, 42 N.Y.S.2d 865 (1943). See also 1 Bogert, Trusts and Trustees § 34.
In the instant case the city would not be holding the property for the entire public, but for a specific class within the public. A gift to the city for the benefit of the "youth of this area" is analogous to a gift for the benefit of "orphan boys", Clayton v. Hallett, 30 Colo. 231, 70 P. 429 (1902); or for the benefit of "crippled children", In re Mills' Will, 57 N.Mex. 577, 260 P.2d 1111 (1953). In these latter two case, as in the instant action, only a certain of the general public would receive the beneficial interest.
In McKevitt v. City of Sacramento, 55 Cal.App. 117, 203 P. 132, 136 (1921), it was stated: "* * * It is equally well settled that when the trust is accepted the city assumes the same obligations, and becomes amenable to the same regulations as apply to other trustees of such trust. Among them is the obligation to administer the funds in accordance with the expressed wish of the testator."
Appellant contends, that even if this be considered a trust, its language is so indefinite and uncertain that it cannot be put into effect. Although it is true that indefiniteness of the ultimate beneficiary is one of the characteristics of a public charity, or a charitable trust, there must be certainty in defining the class of individuals to be benefited. 14 C.J.S. Charities § 39, p. 474. The class must be defined by the testator with sufficient certainty so that the courts can be certain that the purposes are being carried out. 2A Bogert, Trusts and Trustees, pg. 18, § 363, and pg. 174, § 378.
Appellant points to Hedin v. Westdala Lutheran Church, 59 Idaho 241, 81 P.2d 741, an action involving a petition to revoke the admission of a will to probate and the granting of letters testamentary, as authority for the proposition that here the will is too indefinite and uncertain for it to be enforced. In the Hedin case the testator included in his will a provision whereby he sought to give his executor and trustee unlimited power of selection of the beneficiary or beneficiaries of his bounty so long as it be expended for religious or charitable purposes. The court determined such provision of the will to be void for three reasons:
1. The bequest was too vague and indefinite as to the beneficiaries as a class. At 59 Idaho p. 244, at 81 P.2d p. 742, the court stated:
"The courts seem to be unanimous in the opinion that the creator of a private trust must designate the beneficiary. In England, and in some of the states of this country, a rule has been established, in the interest of trusts for public charitable uses, whereby they will be upheld although the beneficiary is not designated. Trusts so upheld are dependent upon the English doctrine of cy pres, whereby the King, or the chancellor as the keeper of the king's conscience, has the power, acting ministerially as distinguished from judicially, to designate the beneficiary of a trust for charitable uses, where one has not been designated by the donor or where, for any cause, the trust would fail without such ministerial action. Here, we have no king and, in this state, we have no court with such ministerial power."
2. The trustee was given the right to choose the beneficiaries. The court stated at 59 Idaho 250, at 81 P.2d p. 745:
"* * * The testator sought to invest his executor and trustee with unlimited power of selection of the beneficiary, or beneficiaries, of his bounty, so long as it was expended for religious or charitable purposes. He did not designate a preference for any form of religion nor did he specify any institution or individual, nor class of institutions or individuals, to benefit by a distribution of the property mentioned in this paragraph of his will. Such testamentary efforts have been likened unto powers of attorney to *570 make wills, which the law does not permit. * * *
"While we are in entire accord with the theory that a testator's will should be upheld whenever possible, we are convinced much mischief and evil would result in adopting in Idaho a doctrine which would uphold a will placing the disposal of a testator's property beyond the supervision of the courts."
3. There was no one named to enforce the trusts, but it is stated, 59 Idaho 250-251, 81 P.2d 745 that:
"Apparently, in some states, the attorney general has power to commence and maintain suits to protect public charities where property intended for their use is not being properly applied. In this state, such is not one of the duties of that official. * * *
* * *
"If the sixth paragraph of this will should be upheld, and the trustee therein named should be derelict in the duty sought to be imposed upon him, we doubt that his misconduct could be brought to the attention of a court, because of the lack of a proper party plaintiff."
The second reason mentioned by this court in the Hedin case is not applicable here, for the fifth paragraph of the will did not authorize the trustee to select such beneficiaries as it desired, since the decedent willed the residue of his estate to the City itself for the purposes outlined.
It is insisted that the first and third reason for invalidating the will in the Hedin case are applicable here. There are numerous cases involving the question whether a charitable class has been defined with sufficient certainty. Appellant directs our attention to such cases as National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933), where the testator left part of his estate to the bank to be used as a permanent endowment for girls at Bougasticon, Macedonia, Greece. There was no school for girls there at that time, and the testator failed to appoint any trustees. The court there held that it could not enforce the bequest. In order to do so, it would have had to have established as administration, appoint trustees and decide (among other things) what the school would be for and what girls were to be eligible to attend.
Other cases cited by appellant include: Witten v. Wegman, 182 Ark. 62, 30 S.W.2d 834 (1930), where the court held that a testator failed to define the class with certainty when he attempted to will his money to the purpose of establishing a home for old and dependent women; and therefore such provision was invalid; Beatty v. Union Trust and Deposit Co., 123 W.Va. 144, 13 S.E.2d 760 (1941) where the court held invalid an attempted testamentary trust for worthy, homeless, old women; Bramblett v. Trust Co. of Georgia, 182 Ga. 87, 185 S.E. 72 (1936), citation in a provision in a will intended to establish a home for gentlewomen was held void for uncertainty.
Respondent directs our attention to cases in this area such as People ex rel. Ellert v. Cogswell, 113 Cal. 129, 45 P. 270, 35 L.R.A. 269 (1896), where an attempted testamentary trust for the erection and maintenance of a polytechnic college for the purpose of affording boys and girls of the state of California a practical training in the mechanical arts and industries, was held not to be void for uncertainty. Hulet v. Crawfordsville Trust Co., 117 Ind.App. 125, 69 N.E.2d 823 (1946), where the court ruled a trust for worthy, poor or distressed persons designated the class to be benefited with sufficient certainty. Eledge v. Dixon, 193 Tenn. 654, 249 S.W.2d 886 (1952), upheld a trust created for the purpose of clothing the worthy, helpless, destitute, poor children under the age of twelve years in the vicinity of Englewood. Allaun v. First & Merchants Nat. Bank of Richmond, 190 Va. 104, 56 S.E.2d 83 (1949), upheld a charitable trust for the benefit of poor white *571 people of the county was held to be sufficiently definite to be valid and enforceable.
The phrase "youth of this area" as used in the will to designate the class of beneficiaries involves no greater problem of definition or resolution than the use of the phrase "worthy poor or distressed persons" in a designated city and county, as appears in Hulet v. Crawfordsville Trust Co., supra, or the phrase "children living in the vicinity of Englewood", as was done in Eledge v. Dixon, supra, or the phrase "white poor of Powhatan County, Virginia" in Allaun v. First & Merchants Nat. Bank of Richmond, supra. It has been stated that the requirement of definite designation of the class of the beneficiaries is in order that the courts can be certain that the testator's intendments and purposes are being carried out. 2A Bogert, Trusts and Trustees, pg. 18, § 363. The testator's purposes here and by him intended to afford recreational opportunities for the youth of the area, and are sufficiently expressed to fulfill the requirements of definiteness, 2A Bogert, Trusts & Trustees, pg. 174, § 378; See Annot. 163 A.L.R. 784.
Appellant insists there is no one that can enforce the bequest, and hence it should be held invalid. However, under the provisions of I.R.C.P. 23(a) actions by one or more of a class, are authorized. It has been stated 10 Am.Jur., 670 Charities § 117; "It is a general principle that beneficiaries in a charitable trust have a right to maintain a suit to enforce the trust or prevent diversion of the trust fund." 62 A.L.R. 881.
S.L.1963, Ch. 161, enlarged the duties of the attorney general of this state to encompass the obligation of enforcing charitable trusts.
It is generally held that a municipal corporation may hold and administer property in trust if the trusteeship is germane to the objects of the municipality and within its general powers. 54 Am.Jur. 104 Trusts § 119; 14 C.J.S. Charities § 33, p. 466; Annot. 10 A.L.R. 1368. Under I.C. § 50-313 a city of the second class in this state, (as is Moscow, Idaho), is authorized and empowered to enact ordinances: * * * "To provide for the erection and government of any useful or necessary buildings for the use of the city," and also: * * * "To provide for and regulate recreational programs and to levy and collect a special tax therefor * * *." The City of Moscow is thus authorized to accept, regulate, and administer the trust.
The judgment and decree of the trial court is affirmed.
Costs to respondents.
KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.