RATTO *et al. v.* NASHVILLE TRUST Co. *et al.*\*

(*Nashville,* December Term, 1941.)

Opinion filed February 28, 1942.

---

\*This case is reprinted and annotated in A. L. R.

W. P. COOPER, of Nashville, for appellants.

MANIER & CROUCH, of Nashville, for appellees.

MR. SPECIAL JUSTICE ALAN M. PREWITT delivered the opinion of the Court.

This case is before the Court on an appeal from the chancery court of Davidson County by R. C. Ratto and others from a decree construing the will of Mrs. Ana R. Cochran, deceased.

Mrs. Cochran died testate, a resident of Davidson County, on February 17, 1938. Her husband, the late Arch M. Cochran, predeceased her, and she died without issue. She left several brothers and sisters who were the complainants below, who filed the bill against the Nashville Trust Company, administrator *de bonis non* and *cum testamento annexo* of the estate of Ana R. Cochran, deceased, and Walter R. Sanders, as trustee under the said will. Mr. Sanders was not related to the testatrix. Shortly after the death of Mrs. Cochran, her will was duly probated and the controverted clause in the will, which is the basis of this lawsuit, reads as follows: "All

the rest and residue of my estate, of whatsoever character and kind and wheresoever situated, real, personal and mixed, I give, devise and bequeath to Walter R. Sanders of Nashville, Tennessee, to be used by said Walter R. Sanders for the education of any child or children whom he deems worthy of assistance.''

The chancellor held that said clause created a valid trust which Mr. Sanders was legally entitled to administer. It is complained here that the object of the trust is void for indefiniteness.

The case has been ably argued at the bar of this Court, and lengthy and well-prepared briefs submitted. It is a cardinal principle of the laws with reference to the construction of wills that the intention of the testator governs the construction of the writing, provided such intention does not conflict with settled rules of construction. It has long been settled in this state that our courts will only look to Tennessee law in arriving at the construction to be placed on charitable trusts.

In this case and along with the will in the same envelope were two other papers, both in the handwriting of the testatrix, one document addressed ''To the Judge'' contains the following: ''I beg that this will be allowed to stand as it was my late husband's wish and mine that the entire estate should be used for educating those in need. . . . I again beg that Walter R. Sanders, one of my late husband's close friends, be allowed to close the estate and do with the proceeds what I should have done had I been able.''

Another document addressed ''To the Court'' contains the following: ''If any or all of my relatives contest my will, I wish to state to the Court that every one accepted

greedily my jewelry, money, valuable china, linens, and household effects, and when I had nothing left to give them they became unkind and unjust in their treatment to me. All of them without exception made it impossible for me to live with them in their homes. They refused to answer my letters asking for temporary financial help until such time until I could effect a settlement of my late husband's estate. I do not now owe or have I ever owed a penny to any of them and have always generously compensated each one for any service given me.''

The parties will be referred to according to their status below.

It is contended that no trust is ever invalid for uncertainty where the following three elements are present: (1) A definitely defined purpose to which the gift is to be applied; (2) a named trustee capable of taking the trust; and (3) the clothing of the trustee with the power and discretion for carrying out the trust.

Chief Justice MARSHALL, in *Smith* v. *Bell,* 6 Pet., 68, 8 L. Ed., 322, was quoted in the leading Tennessee case of *Hadley* v. *Hadley,* 100 Tenn., 446, 45 S. W., 342, 343, as follows: ''Cases on wills may guide us to general rules of construction, but unless a case be cited in every respect directly in point, and agreeing in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the interpretation of wills.''

Counsel have cited many of our cases on the law of charitable trusts. Many of these have no application to the case at bar.

Trusts for charitable uses are highly favored by courts of equity and they will be upheld although the parties to be benefitted may not be defined with that precision

which would be requisite in trusts of an ordinary and private description. *Heiskell* v. *Chickasaw Lodge,* 87 Tenn., 668, 677, 11 S. W., 825, 4 L. R. A., 699; *Dickson* v. *Montgomery,* 31 Tenn. (1 Swan), 348, 362; *White* v. *Hale,* 42 Tenn. (2 Cold.), 77.

Uncertainty of the beneficiaries is one of the characteristics of a true, technical, charitable use, because, if the beneficiaries are named with precision, the doctrine applicable to ordinary trusts is sufficient to support it. *Franklin* v. *Armfield,* 34 Tenn. (2 Sneed), 305, 306, 352; *Frierson* v. *General Assembly of Presbyterian Church,* 54 Tenn. (7 Heisk.), 683, 706; *Heiskell* v. *Chickasaw Lodge, supra.*

It is when a trust, which, if it were for an individual, would fail for want of certainty in its object, is supported in equity because it is for a charity that the term "charitable use" is to be in strictness applied. A trust for a charity which is declared with the same certainty in all respects as ordinary trusts is, of course, capable of being sustained by the ordinary rules of property; but a trust which, according to those rules, would fail for uncertainty, is upheld in chancery where the beneficiaries are objects of charity, and is then a charitable use. Sizer's Pritchard on Law of Wills, section 185.

The general rule is that a trust for a charitable object must be definite enough that a court of equity can enforce it. The trust must be to some person, body, or association of persons having a legal existence and with capacity to take and administer the trust, and for some definite and lawful object. So it has frequently been held that where the devise is made directly to a voluntary unincorporated association it must fail for want of capacity in the devisee to take it as a gift to itself, and it fails as a charity because it does not name a trustee

competent to take at the time, or define a charitable use with sufficient certainty to be judicially enforced. *Green* v. *Allen,* 24 Tenn. (5 Humph.), 170; *Rhodes* v. *Rhodes,* 88 Tenn., 637, 13 S. W., 590.

If the gift be sufficiently definite and made to competent trustees for the benefit of an unincorporated institution or association, it will be good. *Frierson* v. *General Assembly of Presbyterian Church, supra;* *Rhodes* v. *Rhodes, supra.* The mere naming of a trustee will not create a valid trust to an unincorporated religious local association, unless the will sets out a definite object to receive its benefits.

In a number of our cases it has been held that where there is a corporation authorized to receive the gift, there is a competent trustee of a charitable use.

A devise or bequest made directly to a charitable corporation need not be as definite or specific as one made to an individual trustee. *Milligan* v. *Greeneville College,* 156 Tenn., 495, 2 S. W. (2d) 90; *Durell et al.* v. *Martin et al.,* 172 Tenn., 97, 110 S. W. (2d), 316; *Sacred Heart Academy* v. *Karsch,* 173 Tenn., 618, 122 S. W. (2d), 416. The validity of such trusts are upheld for the obvious reason that under the charter of the particular corporations the trust can be administered though the objects may not be definitely set out.

Our cases may be grouped as follows: (1) Gifts to a voluntary unincorporated charitable institution; (2) gifts to named trustees for unincorporated charitable institutions, where the objects of the trust are vague and indefinite; (3) gifts directly to incorporated institutions or to trustees for incorporated institutions; (4) gifts to such trustees where it appears that it was the intention of the testator that the corporation was to receive the benefits and not left to a discretion in the trustees to sub-

stitute the object; (5) to individuals or corporations as trustees for a definite object or purpose. (a) *Green* v. *Allen, supra*; *Rhodes* v. *Rhodes, supra*. (b) *Frierson* v. *General Assembly of Presbyterian Church, supra*; *Rhodes* v. *Rhodes, supra*. (c) *Milligan* v. *Greeneville College, supra*; *Durell* v. *Martin, supra*; *Sacred Heart Academy* v. *Karsch, supra*. (d) *Durell* v. *Martin, supra*. (e) *Green* v. *Allen, supra*; *Davis* v. *Bullington*, 164 Tenn., 272, 47 S. W. (2d), 555; *Ford et al.* v. *Bishop Adrian et al.* (Marion Equity), decided June 6, 1941, unreported.

Under group (5), "to individuals or corporations as trustees for a definite object or purpose," it is well settled that where the gift is to a trustee, corporate or individual, competent to act, for a definite object or purpose, it is good. It is not necessary to use the words "that the trustee may select, or to be expended on persons within the class to be chosen by the trustee," for the reason that the very nature of the trust designation implies confidence on the part of the testator in the judgment and discretion of the trustee named. And so where a fund or property is turned over to a trustee capable of acting, said property or fund to be expended or used with a definite objective, the right of discretion is implied in the trustee, whether it is given in express terms or not.

It should be borne in mind that under group (5) there is a distinction where the discretion or election is given to the trustee as to how the property or fund is to be expended on the named objective and where the trustee is given the power to change or substitute the object or purpose of the trust. In the former case, it is no objection to the validity of the trust, and in the latter case it is fatal.

Here there was no discretion reposed in the trustee to change or substitute the object or purpose of the trust. It was definite and fixed.

In the instant case the will was prepared and written by the testatrix, Mrs. Cochran. She was not a lawyer and trained in the use of technical terms. We are persuaded that when she used the word "education" this term was used in its common, ordinary sense, prompted by a desire on her part to aid and assist a worthy child or children in attaining better mental advantages. She no doubt had in mind the schooling of such individuals.

In *Ewell* v. *Sneed*, 136 Tenn., 602, 610, 191 S. W., 131, 133, 5 A. L. R., 303, in an opinion by Mr. Justice GREEN, now chief justice, it was said: "In a number of our cases charitable bequests have been upheld because they were definite in their objects and were supported by trustees." Citing *Dickson* v. *Montgomery, Franklin* v. *Armfield, Frierson* v. *General Assembly of Presbyterian Church, Heiskell* v. *Chickasaw Lodge, supra,* and others.

In *Dickson* v. *Montgomery,* Mr. Justice GREEN, speaking for this Court, said: "Charities have been peculiarly favored by the courts, from the earliest period of the history of our law. Donations of this sort are usually made, for the advancement of education, morality and religion, and for the relief of the indigent, helpless, and disabled; objects which must meet with favor in every civilized and Christian community. Hence, devises and gifts to charitable uses, have been sustained, in cases, where, if the trusts had been for other objects, they would have been void for uncertainty."

Further, it is said:

"But it is objected that the bequests for the benefit of

'Home Missions,' and of 'Foreign Missions,' are too vague and uncertain, and are therefore void.

"It is certainly true that the individuals who may receive any part of this fund as compensation for labor as missionaries, are not designated or known; nor are the persons designated who may be benefited by the ministry of these missionaries; but if this objection were allowed to prevail, it would defeat all charities, for it is of the very nature of a charity, that the individual beneficiaries of the charity are unknown. The gift for such purpose, is of the nature of a power of appointment, and being controlled and administered by trustees, and the objects definite, it is valid."

The will of the testator in *Howell* v. *Stroud*, 1 Tenn. App., 301, provided: "For ten years after my decease, I direct my executor to use the interest on the residue of my estate to assist in educating some bright boy or girl of indigent or needy circumstances."

In that case the Court of Appeals upheld the trust, stating that in its opinion the object of the trust was sufficiently clear and definite.

It is insisted that the term or word "education" might be applied to almost any kind of training.

In *Gibson* v. *Frye Institute*, 137 Tenn., 452, 454, 193 S. W., 1059, 1062, L. R. A., 1917D, 1062, in upholding a charitable trust Mr. Justice GREEN said: "While we decide the case on the grounds stated above, it may not be amiss to observe that education is a broad term. It includes not only the training and development of the mind, but the training and development of the body. One is hardly more important than the other."

However, in that case the language of the will was broader than it is in the instant case and in this

case we think that the testatrix clearly had in mind the schooling of children.

Restrictions as to either locality or numbers included in a class of beneficiaries are not necessary to the validity of a charitable bequest. A charitable gift is good where there is no limit of space expressed, and it is nonetheless so when the benefit of the gift is confined in terms, as it must be in fact, to a particular locality. It is equally good when the limit, although real, is not geometrically exact. Hence, so long as the class for whose benefit the trust is created is definite the geographical limitations of the operation of the charity are unimportant. 10 Am. Jur., 650, and cases there cited.

A charitable trust must be for the benefit of the public or some portion of it. It may be limited to the members of a specified class, who may be limited in their abode to a certain locality or world-wide in extent. Ordinarily the beneficiary need not be in existence at the time of the donor's death, but a gift to a specific person or charitable organization and not to charity generally will fail where the beneficiary is non-existent. 14 C. J. S., Charities, section 37.

The fact that the children to be educated may be far distant from the place of abode of the testator is no objection. The object of the trust is definite and valid.

It is also insisted that the words "child or children" make the trust private instead of public, and therefore this provision in the will cannot be upheld as a charitable trust. We think the testatrix clearly intended an indefinite number, and that she did not have in mind one child. In this connection, it might be stated that testatrix left an estate of approximately twenty thousand dollars, with the principal portion going to carry out

this trust. It could hardly be asserted that she intended to spend all this money on one child and it is very evident that she had in mind more than one child.

It therefore results that we find no error in the decree of the chancellor, and it is affirmed.