JAMES N. HARDIN, Executor of the Will of J. Roy Brown, Deceased, v. INDEPENDENT ORDER OF ODD FELLOWS OF TENNESSEE et al.—370 S.W. (2d) 844.

Eastern Section. April 24, 1963.

Certiorari Denied by Supreme Court September 11, 1963.

Nevils & Harrell, Tazewell, and Walter Gray, Greeneville, for Independent Order of Odd Fellows, et al.

Swingle & Hardin, Greeneville, for James N. Hardin, Executor.

Leon E. Easterly and John A. Armstrong, for Heirs of J. Roy Brown.

McAMIS, P. J. The bill was filed by James N. Hardin, Executor of the will of J. Roy Brown, deceased, for a construction of the will and for instructions as to how to proceed with the administration of the estate. The original bill named as defendants the Independent Order of the Odd Fellows of Tennessee and the heirs at law of J. Roy Brown. By amendment to the bill, Tennessee Oddfellows Home, Inc., a subsidiary corporation of the Independent Order of Odd Fellows, was made a party defendant.

Cross bills were filed by all of the named defendants advancing their respective contentions relating to the construction of the will.

The will is in holographic form and is dated May 10, 1943. It was manifestly composed by the testator without legal advice. We quote it in full:

"last will & testament of J. Roy Brown I will evry thing I own to my wife Jane Brown to be used for her comfort if I die first. if anything is left at her death I will it to the indounet fund of the orphond children Odd fellos orphge home at Clarksville Tenn to be invested in safe bonds. procedes to be used for offond children of that Home I ask James N Hardin to be administrator

& executor or if he can not serv the Court to appoint some one. I especially ask James N Hardin to serv this May 10-1943.

J. Roy Brown"

The testator died June 20, 1949, and his will was duly probated in the County Court of Greene County on July 6, 1949. Thereafter and until the death of Jane Brown on January 11, 1961, the estate, including a valuable farm, was jointly managed and operated by Jane Brown and the Executor, the proceeds being devoted to the use of Jane Brown, evidently on the assumption that Jane Brown had a life estate in the property, both real and personal. The Executor testified that the Odd Fellows organization was not notified of the provisions of the will until after the death of Jane Brown because it could not be known how much, if any, of the estate would be left after providing for her necessary maintenance and support.

The Chancellor found and decreed that the bequest to Odd Fellows lapsed because at the date of the will and on June 20, 1949, when the testator died there was no orphanage at Clarksville or elsewhere maintained and operated by the Odd Fellows, nor did the organization have an endowment fund for such a home for orphaned children. From the decree adjudging that no benefits ever vested in Odd Fellows and that the heirs of J. Roy Brown are entitled to the entire estate, the Independent Order of Odd Fellows of Tennessee and Tennessee Odd Fellows Home, Inc., have appealed and assigned errors.

▮▮ We think the learned Chancellor was in error in finding that there was no orphanage in existence at Clarksville, Tennessee, on May 10, 1943, the date of the

590

will. We reach this conclusion for two reasons. The first is that, beginning in 1899, Odd Fellows maintained a home for orphaned children of its members and for elderly members at Clarksville. In the absence of other proof, the presumption is that a fact once shown to exist continues until the contrary is shown. Harden v. State, 188 Tenn. 17, 216 S.W.(2d) 708. There is also a presumption that the testator was informed as to the object of his bounty and had information that such an orphanage was in existence at the date of the will, especially in view of the fact that he was a member of the Odd Fellows fraternity.

■ There is no proof in the record to overcome these presumptions. The most direct testimony on that subject is that of Mrs. Margaret Holland. She testified that, while she could not recall when the property in Clarksville was last used as a home for children, there were no children there for a year or two before the property was sold in 1949 and the proceeds used to buy a home for elderly members at Nashville, Tennessee. And we can find no proof in the record that there was no endowment fund in existence either at the date of the will or when the testator died.

The charter of the Independent Order of the Odd Fellows of 1899 states as one of its purposes the establishment and operation of a home for orphaned children of members. After that date and until sometime between 1941 and 1949, the exact date not being shown, the Grand Lodge owned and operated an orphanage at Clarksville except that for the period between 1933 and 1941 the operation of the Home was in the hands of appointees of the national Sovereign Grand Lodge.

On October 4, 1941, the Grand Lodge of Tennessee caused to be organized under a separate charter of incorporation Tennessee Odd Fellows Home, Inc. which thereupon took title to, and began the operation of the Home at Clarksville. It has continuously received legacies and gifts to the Home since its organization. Mr. Anglea, an attorney at the Nashville Bar, who was elected Grand Master of the Lodge in 1941, testified that regular contributions are made to the Tennessee Odd Fellows Home, Inc., by the Grand Lodge of Tennessee and that this money has been used for the maintenance of orphaned children of lodge members; that in 1949 the property at Clarksville had deteriorated to the point it was deemed advisable to sell it and buy a home at Nashville but that, following modern thought and practice on the subject, it was decided not to keep children and elderly people in the same home; that the number of children to be cared for had greatly diminished and that the funds set aside for that purpose since about 1949 or shortly before have been used to keep these orphaned children at Odd Fellows homes in Virginia and Pennsylvania where adequate medical and psychiatric care are available. When the proof was taken 4 children were being cared for in this way and another at a State institution. No home for children has been owned or operated since 1949.

The proof shows that while the Grand Lodge of Tennessee had financial difficulties between 1933 and 1941, it has never been inoperative and that since its charter was granted Tennessee Odd Fellows Home, Inc. has continuously maintained its corporate structure and existence. When the proof was taken the Grand Lodge of Tennessee had on hand in cash a total of $65,007.58

and had a membership of approximately 2850. There is no proof as to whether Tennessee Odd Fellows Home, Inc., has or has not maintained in its own name an endowment for orphaned children. We regard that as immaterial, however, since it is only an instrument of the Grand Lodge and, in any case, there is no basis for holding that an endowment fund had to be in existence when the will was written or when it became operative upon the death of the testator. Although the language of the will seems to imply that the testator thought there was such an endowment already in existence it may well be that he desired to make possible the creation of such an endowment by the bequest here in question.

The testator was interested in providing an endowment fund for orphaned children of members of the Order. This much is plain from the most casual reading of the will. Not being a lawyer and apparently of meagre education, he chose the language of a layman to express his purpose. Doubtless, it never occurred to him to differentiate between the home as it was no doubt customarily referred to by members and the corporate entity which operated it and held the legal title to the physical plant located there. His dominant purpose was to aid through an endowment fund the orphaned children of members of his fraternity who at the date of the will were being maintained at the Home in Clarksville. The geographical location of this charity, in our opinion, was only descriptive of the beneficiary of the trust and must, at all events, yield to the dominant purpose of the testator to aid orphaned children.

Tennessee Odd Fellows Home, Inc., was a legally subsisting charitable corporation capable of holding title to and administering the funds passing under the will.

The devise will not be struck down by a court of equity because the testator failed to use the corporate name.

■ This question seems to us controlled by the rule that where the name or description of a legatee is erroneous, but there is no reasonable doubt as to the person intended, the mistake will not defeat the legacy or devise. The rule applies to corporations as well as to individuals. See Pritchard Law of Wills and Estates, Phillips, Section 189, where numerous examples of the application of this rule both in Tennessee and other states are carefully collected and cited in the footnotes.

Of the cases cited Milligan v. Greeneville College, 156 Tenn. 495, 2 S.W.(2d) 90, seems most persuasive and in point. The legacy there under consideration was "to the A.F. & A.M. Masonic Widows' & Orphans' Home at Nashville, Tennessee, to be used as said Home shall deem best," etc. In sustaining the legacy, the Court in an opinion by Chief Justice Green, said:

"The gift in the sixth clause is to 'the A. F. & A. M. Masonic Widows' & Orphans' Home at Nashville, Tennessee.' The proof shows that 'A. F. & A. M.' is a common abbreviation for Ancient, Free and Accepted Masons; that such abbreviation is generally used and understood. The designation of the beneficiary may thus be read as the Ancient, Free & Accepted Masons' Masonic Widows' & Orphans' Home; that is to say, the Widows' & Orphans' Home of the Ancient, Free & Accepted Masons. This is equivalent to a bequest to the Ancient, Free & Accepted Masons for the benefit of the Masonic Widows' & Orphans' Home at Nashville, Tenn., for as before stated the conduct of the Masonic Widows' & Orphans' Home at Nashville, Tenn., is but a depart-

ment or branch of the charitable or benevolent work of the Grand Lodge of Free & Accepted Masons.

"We think, therefore, the intention of the testator was clear that his plainly expressed purpose was to make this bequest to a branch or department of a legally organized charitable corporation, capable of taking and holding property, towit, the Widows' & Orphans' Home of the Grand Lodge of Free & Accepted Masons.

"The case then falls under Bank v. Burke, 41 Tenn. (1 Cold.) 623. A note was made payable to the president and directors of the branch Bank of Tennessee at Shelbyville. It seems that the branch bank could not sue in its own name and suit was brought on the note by the president and directors of the Bank of Tennessee, the parent institution. The court held that the suit could be maintained as brought, and said:

" ' * * * The misnomer of a corporation in a grant or obligation does not destroy or defeat a grant or obligation, nor prevent a recovery upon it in the true name, if the same be shown by proper and apt averments and proof.'

"In Trustees of McMinn Academy v. Reneau, 32 Tenn. (2 Swan) 94, it was held that the misnomer of a corporation furnished no ground of objection to the validity of a bond. The bond ran to 'Trustees of McMinnville Academy in Hawkins County.' The true name of the corporation was 'McMinn Academy.' Parol evidence was admitted to explain and show the intention of the parties.

"In State v. Smith, 84 Tenn. (16 Lea) 662, there was a gift of land and money to the trustees of the free

schools of Shelby County for the purpose of erecting a college on the land. There were no such trustees, but the court held that the gift was intended for the directors of the First school district of Shelby county where the testator lived and the land was located.

"To the same effect, see Carson v. Carson, 115 Tenn. 37, 88 S.W. 175.

"So we conclude from the proof that the intention of this testator was to make the aforesaid bequest to the Grand Lodge of Free & Accepted Masons of Tennessee for the benefit of the Widows' & Orphans' Home operated by it at Nashville, and we are of opinion that the misnomer of the corporation does not invalidate the gift, since the proof makes the intention of the will quite clear."

Other applications of the misnomer rule are summarized p. 192 of the above cited text with citations in the footnotes. See also Breeding v. Williams, 9 Tenn.App. 335, where a bequest to Claiborne County Highschool was sustained as a bequest to the Claiborne County Board of Education.

There is applicable here the following statement of Mr. Justice Green in Dickson v. Montgomery, 31 Tenn. 348, 368:

"The rule is so familiar, and so consonant with reason, that it needs no authority to support it—that where the name or description of a legatee is erroneous, and there is no reasonable doubt as to the person who was intended to be named or described, the mistake will not disappoint the bequest. The true intention of the testator may be ascertained and the error corrected."

596

■ The rule in Tennessee is that charitable trusts are highly favored by courts of equity. Bank of Commerce & Trust Co. v. Banks, 161 Tenn. 11, 28 S.W.(2d) 340, 29 S.W.(2d) 658, 69 A.L.R. 1353; Ratto v. Nashville Trust Co., 178 Tenn. 457, 159 S.W.(2d) 88, 141 A.L.R. 341; Eledge v. Dixon et al., 193 Tenn. 654, 294 S.W.(2d) 886. They should be sustained and the manifestly clear general intent of the donor carried out unless inconsistent with law or good morals.

''A charity will always be upheld, where it is created in favor of a person having sufficient capacity to take as donee; or, if it be not direct to such person, where it is definite in its object, lawful in its creation and to be executed by trustees. Franklin v. Armfield, 2 Sneed, 305; Gass v. Ross, 3 Sneed, 211; Cobb v. Denton, 6 Baxter, 235; Frierson v. [General Assembly of Presbyterian Church of U. S.] 7 Heisk, 683; Dickson v. Montgomery, 1 Swan, 348.'' Johnson v. Johnson, 92 Tenn. 559, 564, 23 S.W. 114.

But it is argued that to disregard the reference to the orphaned children to be benefited as being at the Clarksville Home is to apply the doctrine of cy pres which, it is said, is not recognized in Tennessee and that since it was intended that the funds should be used at the Home in Clarksville and there is no longer an Odd Fellows orphanage at that place the bequest must be held to have lapsed as impossible of performance. We cannot agree.

■ It is true the doctrine of cy pres as it existed in England where a representative of the Crown has peculiar powers with reference to charities does not apply in Tennessee.

"The doctrines of parens patriae and cy pres *as recognized in the English law,* have never obtained in Tennessee. Only those powers which in England were exercised by the chancellor by virtue of his extraordinary, as distinguished from his specially delegated, jurisdiction, exist in our chancery court. Green v. Allen, 5 Humph. 170; Dickson v. Montgomery, 1 Swan, 348." Johnson v. Johnson, 92 Tenn. 559, 566, 23 S.W. 114, 116. (Italicizing ours)

This does not mean that in the interpretation of wills under which an attempt is made to create a charitable trust our Courts of Equity are bound by rigid rules of construction which ignore substance for mere matter of form. On the contrary, as we have seen, in Tennessee such trusts are a favorite of the law and will if possible be sustained and effectuated.

■ "When it is said that the doctrine of cy pres does not prevail in the United States, that does not refer to those liberal rules of judicial construction of charitable trusts, by courts of equity, which, prior to the Statute of Elizabeth, were applied in chancery, and of which such statute is only confirmatory, but to the prerogative power exercisable where such statute prevails. Courts here, as anciently, look with favor upon all donations to charitable uses and give effect to them where it is possible to do so consistently with rules of law, and to that end the most liberal rules the nature of the case will admit of, within the limits of ordinary chancery jurisdiction, will be resorted to if necessary." 10 Am.Jur. 677, Charities Section 125.

It seems to us the argument for the heirs confuses the object and purpose of the trust with the manner of its

administration. As we have seen, the dominant purpose of the testator was to benefit orphaned children of members of his fraternity. At the time the will was written that purpose could have been completely and effectually carried out at the Home in Clarksville. Now, under changed conditions and in the light of new thought in this field of charity, Tennessee Odd Fellows Home, Inc., as trustee of the fund, has determined that the purposes of the trust can be better and more economically carried out by maintaining the orphans coming under its care separately and apart from its elderly members by sending them to an Odd Fellows orphanage at another location.

''In all gifts for charitable uses, the law makes a very clear distinction between those parts of the writing conveying them which declare the gift and its purposes and those which direct the mode of its administration—a distinction which is quite inevitable, for it is founded in the nature of things. This distinction must be carefully observed, otherwise there is a risk of inverting the natural order of things by subordinating principles to form, the purpose to its means, the actual and executed gift for a known purpose to the prescribed modes of administering it that are intended for adaptation to an unknown future, and of thus making the chief purpose of the gift dependent on the very often unwise directions prescribed for its future security and efficiency. Hence, it is the rule that where a gift for charitable purposes is otherwise valid, the fact that the donor has indicated an impracticable or illegal method of execution will not render it invalid and unenforceable.'' 10 Am.Jur. 594, 595, Charities, Section 15.

From the foregoing the rule to be deduced is that charitable legacies are favored by the courts and, if possible, will be construed and applied to carry into effect the design and purpose of the donor. The rule applies with special force when the matter in doubt has to do merely with the mode and manner of administering the trust.

For the reasons indicated the decree to be here entered will adjudge Tennessee Odd Fellows Home, Inc., entitled to the fund in question to be held and administered as a trust for the benefit of orphaned children of members of the Grand Lodge Independent Order of Odd Fellows of Tennessee.

The application of the heirs of Jane Brown to intervene amicus curiae is denied.

All cost of both courts will be paid by the Executor out of the funds coming into his hands and the cause will be generally remanded.

Cooper, J., and Taylor, Special Judge, concur.