THIRD NATIONAL BANK IN NASH-VILLE, Trustee Under the Will of Goodloe Cockrill, Deceased, Plaintiff-Appellee,

v.

FIRST AMERICAN NATIONAL BANK OF NASHVILLE, Executor of the Estate of Sterling B. Cockrill, Deceased, and Executor of the Estate of Mary Harris Cockrill, Deceased, Jane Douglas Cockrill Moore, Katherine Peyton Cockrill, Individually and Executrix of the Estate of Calvin Cockrill, Deceased, Peyton Cockrill Davis, Defendants-Appellees,

The Junior League of Nashville, Defendant-Appellant.

Supreme Court of Tennessee.

April 7, 1980.

Thomas M. Evans, W. Ovid Collins, Jr., Nashville, for plaintiff-appellee.

Glendon M. Fisher, Jr., Nashville, for defendants-appellees First American Nat. Bank, executor of the Estate of Sterling B. Cockrill, Jane Douglas Cockrill Moore, Katherine Peyton Cockrill and Peyton Cockrill Davis.

George W. Bishop, III, Nashville, for defendant-appellee First American Nat. Bank of Nashville, executor of the Estate of Mary Harris Cockrill.

Wilson Sims, Nashville, for defendant-appellant The Junior League Home of Nashville.

## OPINION

BLACKBURN, Special Justice.

The question in this case is whether the Junior League of Nashville, Inc., has discontinued the operation of a home or hospital for crippled children in Davidson County. The Chancellor found the Junior League Children's Home had not been discontinued. The Court of Appeals reversed the trial court. We granted an appeal, reverse the Court of Appeals and sustain the decision of the Chancery Court.

Goodloe Cockrill died in 1964, leaving a Last Will and Testament made in 1957 and supplemented by three codicils, the one pertinent to this case being the second codicil, dated August 21, 1961. Article V of the Will provided that $50,000 be placed in trust for the benefit of the testator's son, Sterling B. Cockrill. The income from the Trust to be paid to Sterling B. Cockrill for his life and upon his death the Trust continues for a term of twenty-five years during which time the income is used for the benefit of the Junior League Home for Crippled Children in Nashville. At the end of the twenty-five year period, the Will provides that the Trust terminates and the entire fund is distributed to the Junior League Home. The second codicil supplements Item V of the Will and provides in relevant part as follows:

"2. If after my death and during the life of my son, Sterling, the Junior League should discontinue the operation of a home or hospital for crippled children in Davidson County, the Trust should terminate and the Fifty Thousand ($50,000) Dollar bequest shall go to my son, Sterling, outright."

Sterling B. Cockrill died April 24, 1976, following which the Third National Bank in Nashville, Trustee under the Will of Goodloe Cockrill, filed this case in the Chancery Court as an interpleader and requested the court to construe the provisions of the Will quoted above and determine who was entitled to the Trust corpus.

The Junior League of Nashville established in 1923 a home for the convalescent care of children suffering from crippling diseases. This home was located at Ninth Avenue and Monroe Street in Nashville and remained at this location until 1930 when it was moved to a new facility on White Avenue in Nashville. In 1971 the home was again moved to a wing in the Vanderbilt Children's Hospital where it remains today. The purpose of the Home is to provide care for children no longer needing hospitalization but requiring medical care during a convalescent period. The services of the Home are provided free of charge to any child in the Middle Tennessee area needing convalescent care whose parents are unable to pay the cost of the care.

In 1940, an Endowment Trust was established by the Junior League to provide a mechanism for receiving and administering bequests to or for the benefit of the Home.

During the many years of its existence the primary activity has changed to some extent. Initially the Home served orthopedically crippled children. Children who were victims of poliomyelitis and who required long term hospitalization and convalescence. Since the development of the Salk Vaccine the number of polio victims has declined, and the children's home ministers to children with birth defects, heart problems and cancer, as well as those orthopedically crippled.

In addition to the dramatic changes that have developed in the treatment of medical ailments over the past years there have been equally dramatic changes in the payment for and administration of hospital and medical costs. Federal and State funding is available for certain illnesses to qualified persons. Insurance programs covering hospital and medical costs are possessed by many people. All of these developments have brought about increased problems to institutions in the collection of these third party funds, and the increased difficulty did not escape the Junior League Home for Crippled Children.

In order to provide medical care for children who were generally afflicted with more acute ailments than were the children patients in the early days of the Home, and in order to have available a more sophisticated staff and emergency care facilities near at hand, a decision was made in 1970 to move the Home to the Vanderbilt Hospital Complex.

On December 8, 1970, a contract was executed by Vanderbilt University, the Children's Regional Medical Center and The Junior League of Nashville, Inc., to bring about this desired move. This contract called for the Junior League to provide Two Hundred Thousand ($200,000) Dollars in cash by August 1, 1971, for the cost of

constructing the Children's Home. The Junior League also provided all usable beds and equipment then in use at the White Avenue property.

In addition the net income from the endowment trust fund established and maintained by the Junior League, the corpus of which is valued at approximately Two Million Six Hundred Thousand ($2,600,000) Dollars, was to be paid semi-annually to the children's fund of the center "to provide for the convalescent care of needy children for whom no other funds or inadequate funds are available." Through this provision and the payment of the Two Hundred Thousand ($200,000) Dollars for construction, the Junior League endowment trust has provided approximately One Million ($1,000,000) Dollars for the operation of the Children's Home from the date of the contract to the filing of this cause in the Chancery Court.

The Junior League also provides volunteer workers in the Home and membership on the Board of Directors. The contract stipulates that should the Junior League become dissatisfied with the operation of the facility, as set forth therein, they may rescind the agreement.

An oral hearing was held in the Chancery Court following which the Chancellor issued detailed and explicit findings of fact and in Section 3 of the judgment ordered as follows:

"The Junior League of Nashville, Inc. is continuing the operation of a convalescent home or hospital for crippled children in Davidson County, Tennessee by means of its contract with the Children's Regional Medical Center, a part of Vanderbilt University Hospital, within the meaning of the Will and Codicils of Goodloe Cockrill, deceased; and the trust established thereunder has not been and is not terminated. Therefore the Third National Bank in Nashville, Trustee is authorized to continue to pay the net income derived from said trust to the Junior League of Nashville, Inc. for the use and benefit of the Junior League Convalescent Home or Hospital for Crippled Children as now conducted under said contract with the Children's Regional Medical Center."

An appeal was taken to the Court of Appeals by the defendant heirs. The decision of the Chancellor was reversed and the Junior League of Nashville, Inc. has appealed to this Court.

Appellants present two issues for review as follows:

(1) Whether the preponderance of the evidence presented at trial and the language of the Will and Codicil of Goodloe Cockrill are contrary to the finding of the Chancellor that the Will and Codicil of Goodloe Cockrill evidences an intent to establish a trust for the maintenance and operation of a home or hospital for crippled children in Davidson County, Tennessee.

(2) Whether the preponderance of the evidence presented at trial is contrary to the finding of the Chancellor that the Junior League of Nashville is continuing the operation of a convalescent home or hospital for crippled children in Davidson County, Tennessee.

I

Inasmuch as the Chancellor and the Court of Appeals differed in their respective findings and conclusion of fact upon the oral evidence heard by the Chancellor, this Court must review the evidence de novo, but with the presumption that the Chancellor's judgment is correct unless we find the evidence preponderates against it. T.R.A.P. 13(d); T.C.A., § 27–202; Lanius v. Donnell, 222 Tenn. 58, 432 S.W.2d 659 (1968).

The Chancellor determined:

"The quoted language of the Will and Codicil considered in the light of the entire Will and Codicils, evidence the intent of Goodloe Cockrill to establish the trust for the maintenance and operation of a home or hospital for crippled children in Davidson County, Tennessee."

In its opinion the Court of Appeals stated:

"We are unable to glean from the Will and Codicil any intent on the part of

Goodloe Cockrill to establish the trust for the maintenance and operation of a home or hospital for crippled children. His intent was to give to the Junior League an interest in the trust so long as it operated a home or hospital."

We agree with the Court of Appeals in its finding. At no place in the Will and Codicil is there reference to merely a "home or hospital for crippled children" without "Junior League" connected thereto.

The basic rule in construing a will is that the court will seek to discover the intention of the testator, and will give effect to it unless it contravenes some rule of law or public policy. That intention is to be ascertained from the particular words used, from the context and from the general scope and purpose of the instrument. *Bell v. Shannon*, 212 Tenn. 28, 367 S.W.2d 761 (1963).

The pertinent part of the Will expressing the testator's wishes on this matter states:

"The Trustee shall keep this fund invested and pay over the net income only, to my son, Sterling B. Cockrill, as long as he shall live, said payments to be made at least semi-annually. Upon his death the trust shall continue for a term of 25 years during which time the income therefrom shall be used for the benefit of the Junior League Home for Crippled Children in Nashville, said fund shall be known as the Goodloe and Mamie H. Cockrill Memorial Fund."

And then in the 1961 Codicil the testator sets forth in Section 2:

"If after my death and during the life of my son, Sterling, the Junior League should discontinue the operation of a home or hospital for crippled children in Davidson County, the Trust shall terminate and the Fifty Thousand Dollars ($50,000) bequest shall go to my son, Sterling, outright."

It is readily apparent from the reading of the foregoing provisions of the Will and Codicil that the testator's intent was to benefit crippled children, but the Junior League was to be the vehicle through which this benefit was conferred.

## II

The decisive question is "Does the Junior League continue to operate the Junior League Home?" Again the Chancellor found that it did, and the Court of Appeals determined otherwise. In this instance we agree with the Chancellor.

The only witness orally testifying at the trial was Mary Schlater Stumb. Mrs. Stumb was President of the Junior League in 1971 when the Children's Home was moved from White Avenue to the present location and she is a member of the Board of Trustees of the Junior League Endowment Trust. The testimony of this witness was detailed and knowledgeable as to the operation of the Children's Home over the years. A small portion but vital part of this testimony on the above question is as follows:

"Q. Now, is the Junior League Home for crippled children still in existence?

"A. Yes, it is.

"Q. And where is it located?

"A. D–3100 of the Vanderbilt Complex of the Children's Hospital.

"Q. And that is the Home that was moved first from Ninth and Monroe to White Avenue and now to that area in the Vanderbilt Children's Hospital?

"A. Yes. That's correct."

The continued operation of the Junior League Home is apparently well known in Middle Tennessee, and has been judicially determined to be in continued operation.[1]

1. In the case of *J. H. Larimer, Executor, et al. v. The Imperial Council of the Shrine of North America, et al.*, Chancery Court of Cannon County (1977), the Chancellor found as follows:

"2. Since 1924, the Junior League has operated and provided financial support for the

Junior League Home for Crippled Children in Nashville, Tennessee (the "Home"), a home for convalescent and rehabilitative care of crippled children from Middle Tennessee. At the time Mrs. Charter executed her Will in 1965 the Home was the only charitable insti-

The Goodloe and Mamie H. Cockrill Memorial Fund, referred to as the Goodloe Cockrill Trust, was conditioned upon the continued operation of a home or hospital for crippled children in Davidson County by the Junior League. This is a condition subsequent which if plainly expressed must be enforced. *Nolfe v. Byrne*, 142 Tenn. 309, 219 S.W. 1 (1920).

There is nothing in this condition, however, which requires the Junior League to continue the Home on White Avenue, or to maintain the Home in a building owned by the Junior League, or to treat children for certain ailments only, or to perform the mechanics of administration in a certain fashion. The decision of the Junior League to finance the construction of a 12-bed unit in the Vanderbilt Hospital Complex for the location of the Home, to finance its operation and utilize modern business methods in its administration is, in our opinion, no deviation from or discontinuance of the "home or hospital" perceived by the testator.

The purpose of the trust was obviously to assist in the operation of a home or hospital by the Junior League to treat sick and afflicted children. At the time the Will was written in 1957, and also when the Codicil was executed in 1961, the purpose of the trust could have been completely and effectively carried out at the Home on White Avenue. Now, however, under changed conditions in medical treatment and hospital management the Junior League has determined that the Home for Children maintained by them can function better at its present location in the Vanderbilt Hospital Complex. The Junior League has the right to make this decision and the manner in which it was done does not violate the testator's wishes.

The facts in this case are similar to *Hardin v. Independent Order of Odd Fellows of*

Tenn., 51 Tenn.App. 586, 370 S.W.2d 844 (1963) and the principles and policies set forth in that case are applicable here.

The size of the Goodloe Cockrill Trust in and of itself is not sufficient to generate enough revenue to operate a medical facility. However, the funds that have been realized from this trust have been used for the benefit of the Junior League Home in accordance with the wishes of the testator. In fact the record shows without contradiction that all of the funds from the Junior League Trust of some Two Million Six Hundred Thousand ($2,600,000) Dollars are and always have been used for the benefit of the children in the Junior League Home.

Appellees contend the amendment to the Junior League Endowment Trust made in 1970 is proof that the Junior League "recognized that it would no longer be operating the Children's Hospital, and it changed the language of the trust to prevent its termination."

The applicable provision in the original trust states:

"2. This trust shall continue so long as the Junior League of Nashville, Inc. continues to own, maintain and operate its Home for Crippled Children, but in the event the said Junior League of Nashville, Inc. shall for any reason whatsoever cease to own, operate and maintain said Home for Crippled Children, this trust may be terminated . . . ."

Paragraph 3 of the Amendment to the Trust states:

"This trust shall continue for use by the Junior League· of Nashville, in its sole judgment, from time to time, so as to serve the best interests of children in need of convalescent care and .related medical service because of crippling disease or other impairment, and of children in need of care and treatment who are

tution in Middle Tennessee caring for crippled children. The Home continues to exist today as a viable operating entity performing substantially the same services as it performed in 1965, but now located in the Vanderbilt University Children's Hospital. Mrs. Charter's intent in placing the above-quoted provision in her Will was to benefit crippled

children in the Home. The court finds that the Home, the intended beneficiary, is presently existing, supported financially and otherwise by the Junior League, as a part of the Vanderbilt Children's Hospital, where it is carrying on substantially the same services as it performed at the time Mrs. Charter made her Will."

crippled or impaired by nervous or emotional problems, including but not limited to children crippled or impaired because suffering from learning or behaviour problems."

We find nothing in this amendment which prohibits or would in any fashion prevent the Junior League from operating a Home for Crippled Children. As to the reason for the amendment, the only evidence presented was by Mrs. Stumb who testified:

"There were two reasons. One, we wished to move the home to a facility that we no longer owned, and we wished to keep the trust intact where the income from it still would go to these children, even though we didn't own the property in which the home was to reside. The second reason for changing the trust was that the White Avenue property, which we did still own, that second sort of new part that we added, was indeed to house children who had what in a polite sense could be termed as behavioral or developmental problems. And we wanted to be sure that legally we were able to do both of those things. We had no intention, as you can see, because we haven't done so in the last seven years, of the income not continuing to go to the home. It has."

We are of the opinion that the judgment of the Court of Appeals should be reversed and the judgment of the Chancery Court be reinstated. The cause is remanded to the Chancery Court for any further orders made necessary by the judgment of this Court. Costs of appeal are taxed against Third National Bank as Trustee of the estate of Goodloe Cockrill.

BROCK, C. J., and FONES, COOPER and HENRY, JJ., concur.