William W. PETTY, as Administrator CTA of the Estate of Flossie B. Walker, Plaintiff–Appellant,

v.

Thomas PRIVETTE, Jr. and John P. Valliant, Jr., Defendants– Appellees.

Court of Appeals of Tennessee, Western Section, at Knoxville.

Feb. 6, 1989.

Application for Permission to Appeal Denied by Supreme Court May 8, 1989.

John C. Stophel, Richard W. Bethea, Jr., Michael S. Jennings, Stophel & Stophel, P.C., Chattanooga, for plaintiff-appellant.

John O. Threadgill, G. Kevin Hardin, Butler, Vines, Babb & Threadgill, Knoxville, for defendant-appellee Thomas Privette, Jr.

Stephen C. Daves, O'Neil, Parker & Williamson and Arthur G. Seymour, Frantz, McConnell & Seymour, Knoxville, for defendant-appellee John P. Valliant, Jr.

FARMER, Judge.

This is the appeal of a suit brought on behalf of the estate of Flossie Broome Walker seeking damages for negligence on

the part of the initial executor of the estate and recovery of certain fees paid to an attorney retained by that executor during his administration of the estate.

The last will and testament of Mrs. Walker was drafted by Ivan T. Privette, Sr. and named him as executor of the estate. Thomas Privette, Jr., his son and law partner, was designated by the will as alternate executor. The will, which was executed by Mrs. Walker on December 15, 1978, also included the following provision:

## XI.

No trustee or executor serving hereunder shall be liable or responsible for any act or omission unless such act or omission shall have been done or omitted in bad faith and any act or omission done or omitted by any executor or trustee serving hereunder upon the advice of legal counsel shall be conclusively presumed to have been done in good faith.

Mrs. Walker died on August 26, 1982 and her will was offered for probate in common form on September 2, 1982. Because Mr. Privette, Sr. declined to serve, Mr. Thomas Privette, Jr., a defendant in this action, was appointed executor of the estate. A will contest was threatened by a relative of Mrs. Walker and as a result, a petition for probate in solemn form was filed on July 13, 1983. There was no will contest.

Mrs. Walker's estate was quite extensive consisting of some $800,000.00 in cash, TVA bonds worth nearly $33,000.00 and approximately 160 acres of prime real estate located in West Knox County. This real estate was zoned agricultural as of the date of Mrs. Walker's death. However, prior to her death defendant Privette and others had worked to have the property rezoned to "planned commercial" so as to greatly enhance its value. The will provided for several specific bequests to relatives and charities. However, the bulk of the estate was to be distributed to ten charitable organizations as residuary legatees (the "charitable beneficiaries").

Mr. Privette's actions in administrating the estate were questioned by representatives of the various charitable beneficiaries on several occasions. On December 17, 1984, a petition for an accounting was filed by the charitable beneficiaries in the Knox County Chancery Court. When defendant Privette failed to respond, the charitable beneficiaries filed, on March 4, 1985, a petition to show cause as to why defendant Privette should not be removed as executor for failure to account to charitable beneficiaries. These were the first of many petitions filed by both defendant Privette and the charitable beneficiaries, all of which led to the order of March 10, 1986 which allowed defendant Privette to resign as executor. On March 31, 1986, the current administrator c.t.a., William Petty, was appointed. That same day Mr. Petty filed suit against Mr. Privette as well as Mr. Valliant, an attorney retained by Mr. Privette to help secure the rezoning of Mrs. Walker's property from agricultural to commercial.

The amended complaint alleges essentially that Mr. Privette failed to account to the charitable beneficiaries, failed to disburse the funds to the charitable beneficiaries in a timely fashion, made imprudent investments of the estate assets and made an excessive and unauthorized payment to defendant Valliant from whom the complaint demanded the return of the excessive portion of that payment. The complaint also named several others as defendants, however, these claims were settled and dismissed prior to trial.

After a trial on the merits, the Chancellor issued a memorandum opinion holding, *inter alia,* that the exculpatory clause in Mrs. Walker's will was void as against public policy; however, the court stated that "Mr. Privette took the actions that he took for the ultimate benefit of this estate and fully intended to increase the corpus of the estate." In spite of this, the court found that defendant Privette had violated the "prudent man rule" and on that basis awarded plaintiff damages on several claims by plaintiff, including the forfeiture of defendant Privette's executor fee. As to defendant Valliant, the court found that, considering the work done, the fee was reasonable and dismissed all claims against him.

The plaintiff appeals the decision of the trial court insofar as it declined to award damages against defendant Privette in several areas as well as the dismissal of the plaintiff's claims against defendant Valliant.

■ As a threshold question, we must consider defendant-appellee Privette's contention that the exculpatory language in Mrs. Walker's will bars any claim against him arising from an action taken in good faith. This is a question of law. *See Affiliated Professional Services v. South Central Bell Telephone Co.*, 606 S.W.2d 671 (Tenn.1980). Therefore, we must consider this issue *de novo* on the record with no presumption of correctness for the conclusions of the trial court. *Billington v. Crowder*, 553 S.W.2d 590 (Tenn.App.1977).

Because Mrs. Walker's intentions are plainly set out in the exculpatory clause, this Court is bound to give effect to them unless some rule of law or public policy precludes it. *Third National Bank v. First American National Bank*, 596 S.W.2d 824 (Tenn.1980). Since our Supreme Court's decision in *Moss v. Fortune*, 207 Tenn. 426, 340 S.W.2d 902 (1960), the public policy of Tennessee has clearly favored the freedom of parties to contract that one shall not be liable to the other for his ordinary negligence. *See also Adams v. Roark*, 686 S.W.2d 73 (Tenn.1985) (one may not contract away liability for an act done intentionally or with reckless disregard). However, the validity of an exculpatory clause contained in a will appears to be a question of first impression in Tennessee, although other states have considered the question. Clauses holding the executor or trustee blameless for ordinary negligence and breach of trust have been upheld in several states in conformance with the nearly universal policy of attempting to give effect to the testator's wishes. *See e.g. MAJS Investment, Inc. v. Albany Bank & Trust Co.*, 175 Ill.App.3d 478, 124 Ill.Dec. 918, 529 N.E.2d 1035 (1988); *New England Trust Co. v. Paine*, 317 Mass. 542, 59 N.E.2d 263 (1945); *Jarvis v. Boat-men's National Bank of St. Louis*, 478 S.W.2d 266 (Mo.1972); *Bartlett v. Dumaine*, 128 N.H. 497, 523 A.2d 1 (1986). *See also* Rest.2d, Trusts, § 222. Texas has also allowed the use of exculpatory clauses in wills by statute. *See Bliedan v. Greenspan*, 742 S.W.2d 93 (Tex.App.1987). Guided by the case law of other jurisdictions and Tennessee's public policy favoring freedom to contract for exculpation, it would appear that ordinarily an exculpatory clause in a will should be upheld.

■ However, this is not the precise issue presented by this appeal. We perceive the issue to be whether an attorney serving as the executor of an estate, having been so designated in a will prepared by that attorney or a member of his firm, is protected by an exculpatory clause in the will limiting the executor's liability to acts of bad faith.[1]

Our Supreme Court has carved out an exception to the long-standing rule that exculpatory clauses are valid in *Olson v. Molzen*, 558 S.W.2d 429 (Tenn.1977). *Olson* involved a medical malpractice claim which the defendant doctor claimed was barred because the plaintiff patient had signed a release from liability form. The court found that such an exculpatory clause was offensive and contrary to public policy when its signing was a condition of receiving medical treatment. Six criteria were set out as the basis for determining whether a given transaction is against public policy:

[a.] It concerns a business of a type generally thought suitable for public regulation.

[b.] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

[c.] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

---

1. We do not consider the issue of whether a professional trust company may benefit from such a clause.

[d.] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking the exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

[e.] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

[f.] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

558 S.W.2d at 431. *Olson* applies only to professional service contracts. *See Schmatter v. Development Enterprises,* 584 S.W.2d 459 (Tenn.App.1979). Because the will at issue purports to protect a professional, i.e., an attorney, we must first consider the criteria set out by *Olson.*

First, the area of administration of wills is obviously suitable for public regulations. This is evidenced by the statutes that set forth the duties and obligations of executors and trustees. The Tennessee Legislature has devoted an entire title to the "Administration of Estates" T.C.A. § 30–1–101 to 5–144 as well as separate titles for "Descent and Distribution" §§ 31–1–101 to 6–122 and "Wills," §§ 32–1–101 to 5–110. *See also* T.C.A. §§ 35–2–102 to 112, the "Uniform Fiduciaries Act" and T.C.A. §§ 35–3–101 to 121, "Investment of Trust Funds." However, the administration of wills is an area which is clearly of importance to the testator as well as the beneficiaries but it is not an area of "great importance to the public" nor is it "often a matter of practical necessity" since no special qualifications are necessary. This is

shown by the fact that executors are frequently the surviving spouse or other relative of the testator.

The trial court found that Mr. Privette had experience in administrating estates but this is insufficient to show that Mr. Privette held himself out as willing to administer an estate for any member of the general public. No evidence is present to show that Mr. Privette possessed any decisive advantage in bargaining power. This is especially true with an estate as large as that of Mrs. Walker which gave her bargaining power as well. There is no standardized adhesion contract at issue in the case at hand. As is the case of most wills, this will was drafted specifically for Mrs. Walker.

The last criteria in *Olson* is present in that Mrs. Walker's property, as a result of the will, was placed under the control of Mr. Privette and was subject to the risk of his carelessness. Thus, only two of the *Olson* criteria are present in the case of an exculpatory clause in a will. While it is not necessary that all criteria be present for a particular transaction to be offensive, we do not believe that enough of these characteristics are present in the case at hand to hold that, as a matter of law, an exculpatory clause contained in a will is against public policy.

However, because the benefit of this particular clause is being claimed by an attorney who is the son of and member of the same firm as the attorney who drafted the will, this transaction must now be carefully scrutinized to make certain that the inclusion of the clause was not the result of undue influence, overreaching or abuse of the fiduciary relationship.[2] This question also appears to be one of first impression in Tennessee.

At least one state appears to have held that, as a matter of law, the attorney who drafts the will is precluded from reliance

---

**2.** It should be noted that DR 6–102 which precludes a lawyer from limiting "his liability to his client for his personal malpractice" does not apply to this situation. First, while violations of the Code of Professional Responsibility may be some evidence of negligence, the Code is not actionable in a civil, private action. See *Wood-*

*ruff v. Tomlin,* 616 F.2d 924 (6th Cir.1980), *cert. denied,* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980). Secondly, all actions of which plaintiffs complain were committed by defendant Privette solely in his capacity as executor, not while acting as an attorney.

on an exculpatory clause when the testator did not receive independent advice as to the meaning and effect of such a clause. *Fred Hutchinson Cancer Research v. Holman,* 107 Wash.2d 693, 732 P.2d 974 (1987). However, other states have held that an attorney may, under certain circumstances, be protected by an exculpatory clause even when that attorney drafted the will.

■ The Restatement (Second) of Trusts, § 222(3) states:

To the extent to which a provision relieving the trustee of liability for breaches of trust is inserted in the trust instrument as the result of an abuse by the trustee of a fiduciary or confidential relationship to the settlor, such provision is ineffective.

The comment to that subsection suggests several factors to be considered in determining if such a relation has been abused and notes: "[t]he mere fact that the trustee draws the trust instrument and suggests the insertion of a provision relieving the trustee of liability does not necessarily make the provision ineffective." The factors suggested for consideration are:

(1) whether the trustee prior to the creation of the trust had been in a fiduciary relationship to the settlor, as where the trustee had been guardian of the settlor; (2) whether the trust instrument was drawn by the trustee or by a person acting wholly or partially on his behalf; (3) whether the settlor has taken independent advice as to the provisions of the trust instrument; (4) whether the settlor is a person of experience and judgment or is a person who is unfamiliar with business affairs or is not a person of much judgment or understanding; (5) whether the insertion of the provision was due to undue influence or other improper conduct on the part of the trustee; (6) the extent and reasonableness of the provision.

*See also* III *Scott on Trusts* (3d ed. 1967) § 222.4, pp. 393–394. The Massachusetts courts have held that an attorney may benefit from an exculpatory clause which he or a member of his firm drafted. *Boston Safe Deposit & Trust Co. v. Boone,* 21 Mass.App. 637, 489 N.E.2d 209 (1986). That court followed the standard governing transactions between attorney and client set out in *Barnum v. Fay,* 320 Mass. 177, 69 N.E.2d 470 (1946). In *Barnum,* the Massachusetts Supreme Court noted:

Any transaction between an attorney and his client when called in question must be subjected to careful scrutiny and the burden is upon the attorney to prove that any influence over the client which might be presumed to have arisen out of the relationship was neutralized by independent advice given to the client or by some other means so that there was no overreaching of the client and no abuse of confidence. Whether that burden has been sustained depends upon the facts in each particular case. There is no rule of law that unless such independent advice is shown every transaction between an attorney and client must be set aside, although there are instances where the circumstances are such that in the absence of such evidence an attorney is unable to show that the transaction was fairly and honestly conducted.

69 N.E.2d at 473. An analogous problem is presented when an attorney is a major beneficiary of a will he drafted. In such cases, a presumption of undue influence arises because of the confidential nature of the relation, and the donee has the burden of showing "the fairness and honesty of the transaction and to negate the presumption of undue influence." *Parham v. Walker,* 568 S.W.2d 622, 625 (Tenn.App.1978). *See also Kelly v. Allen,* 558 S.W.2d 845 (Tenn. 1977). The presumption of undue influence has been overcome by a showing of a long attorney-client relationship and friendship both before and after the execution of the will. *Hickey v. Beeler,* 180 Tenn. 31, 171 S.W.2d 277 (1943). Thus, the presumption of undue influence is not irrebuttable and may be rebutted by different configurations of facts. Based on our courts' approach to this area of law, we believe the factors set out by the Restatement (Second) of Trusts and by the Massachusetts court's rule of law most accurately reflect the public policy of Tennessee with respect to exculpatory clauses. We therefore hold that an attorney may benefit from a clause limiting his liability for ordinary negligence in the course of his duties as executor

when the will was drafted by himself or another member of his firm if the attorney proves there was no overreaching, undue influence or abuse of the fiduciary relationship.

The validity of the exculpatory clause was raised by defendant Privette in a motion for a directed verdict at the close of the plaintiff's proof. At that time, the trial court held that, as a matter of law, an exculpatory clause in a will is unenforceable as against public policy. Thus, defendant Privette was effectively precluded from introducing proof to rebut the presumption arising from the attorney-client relationship which resulted in the exculpatory clause. Therefore, pursuant to T.C.A. § 27-3-128, we remand this cause to the trial court for the purpose of hearing further evidence as to undue influence, overreaching or any abuse of confidential rela-tionship, with the burden of proof resting upon defendant Privette. *See Needham v. Beer Bd. of Blount County,* 647 S.W.2d 226 (Tenn.1983). The trial court should consider all the factors set forth above in making this determination.

This cause, including the record, is remanded for further proceedings consistent with this Opinion. The trial court shall certify its findings and transmit said findings, along with the record, back to the Clerk of this Court, whereupon the appeal will be disposed of as to all issues.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.